UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| COURTNEY SMITH,<br>    Plaintiff<br><br>v.<br><br>FAMILY DOLLAR STORES, INC. AND FAMILY DOLLAR STORES OF LOUISIANA, INC.,<br>    Defendants. | CIVIL ACTION NO.:<br><br>JUDGE:<br><br>MAGISTRATE: |

**COMPLAINT AND JURY DEMAND**

**I.  INTRODUCTION**

1. This action arises out of an act of non-consensual workplace sexual violence, namely the oral rape[1] by a Family Dollar Store manager of his subordinate, the plaintiff. This act constituted sexual harassment made illegal under both federal and state employment laws.

2. The United States Supreme Court has recognized that sexual harassment is a form of gender discrimination.[2]

3. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

4. Similarly, La. R.S. 23:332(A) states that "[i]t shall be unlawful discrimination in employment for an employer to engage in any of the following practices: (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any

---

[1] Under Louisiana law, "rape" includes the touching of the genitals of the offender using the mouth of the victim without lawful consent. See La. R.S. 14:41.
[2] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986). In *Meritor*, the plaintiff alleged that her supervisor had raped her, among other acts of sexual harassment.

individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's . . . sex."

5. By definition, the act of rape is unwelcomed. "It goes without saying that forcible rape is 'unwelcome physical conduct of a sexual nature.'"[3] The plaintiff did not welcome her rape.

6. Furthermore, "[r]ape is unquestionably among the severest forms of sexual harassment."[4]

7. This is no ordinary sexual harassment case, but one that altered the conditions of the plaintiff's employment, as well as her life. For the rest of her life, the plaintiff will be a survivor of a workplace sexual assault with all of the trauma that status entails.

8. The defendants are liable for their supervisor's rape of the plaintiff, which constituted a severe, abusive, and intolerable form of sexual harassment, as will be detailed below.

## II. JURISDICTION

9. The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction).

## III. VENUE

10. The unlawful employment practices alleged below were committed in Patterson, St. Mary Parish, Louisiana within the jurisdiction of the United States District Court for the Western District of Louisiana.  Venue, therefore, lies in the United States District Court for the Western District of Louisiana under 42 U.S.C. § 2000e-5(f)(3).

---

[3] *Lapka v. Chertoff*, 517 F.3d 974, 982-83 (7th Cir. 2008) (citations omitted).
[4] *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002).

## IV.  PARTIES

11. Plaintiff Courtney Smith ("Plaintiff" or "Ms. Smith") is a person of the full age of majority. She resides in Lafourche Parish, Louisiana and is a citizen of the State of Louisiana.

12. Defendant Family Dollar Stores, Inc. is incorporated in Delaware and has a principal place of business in Chesapeake, Virginia.

13. Defendant Family Dollar Stores of Louisiana, Inc. is incorporated in Virginia and has a principal place of business in Chesapeake, Virginia.  Family Dollar Stores of Louisiana, Inc. appears on Plaintiff's Form W-2.

14. Family Dollar Stores, Inc. and Family Dollar Stores of Louisiana, Inc. are collectively referred to herein as "Defendants" or "Family Dollar."

15. Plaintiff alleges that Defendants were integrated employers and/or joint employers of Plaintiff in that they share common management, are interrelated in their operations, share a centralized human resources/labor relations department, exist under common financial control, possessed the power to hire and fire Plaintiff, supervised and controlled Plaintiff's work schedules or conditions of employment, determined Plaintiff's rate and method of payment, and/or maintained employment records. Defendants paid compensation to Plaintiff.

## V.  STATEMENTS OF FACTS

16. In the fall of 2019, Ms. Smith applied for a position as an Assistant Store Manager at the Family Dollar store in Patterson, Louisiana. She was hired and began work at the store on or around September 8, 2019. Ms. Smith is petite and stands at about 5 feet, 4 inches.

17. When Plaintiff began her new job, Shaquita Clark ("Ms. Clark") was the Store Manager at the Family Dollar store in Patterson.

18. The District Manager for the Family Dollar store in Patterson was Joseph Montgomery ("District Manager Montgomery"). On information and belief, District Manager Montgomery is a former professional basketball athlete; he is a tall man, over 6 feet in height.

19. On or around Friday, December 27, 2019, District Manager Montgomery fired Ms. Clark. On information and belief, Defendants reported Ms. Clark to law enforcement for allegedly issuing refunds on merchandise that had not been purchased at the Patterson store.

20. On or around Friday, December 27, 2019, after having fired Ms. Clark, District Manager Montgomery spoke to Ms. Smith about whether she would be interested in becoming the new Store Manager. Plaintiff said she would be interested as long as she could receive training for the position.

21. Ms. Smith was originally scheduled to be off the next day, Saturday, December 28, 2019. District Manager Montgomery urged Plaintiff to come in and train for the position, so Plaintiff took the early shift.

22. On Saturday, December 28, 2019, Ms. Smith arrived at work for the early shift and worked the cash register. District Manager Montgomery arrived later in the morning at approximately 9 or 10 AM. The cashier arrived around the same time and took over the cash register.

23. District Manager Montgomery trained Ms. Smith on various store practices until early afternoon when he told her he needed to talk to her about something important in the office.

24. The office door has an electronic keypad door lock which requires the manager to enter a code to unlock the door. When the door is closed, the office is locked from the outside. Only managers with knowledge of this code can unlock the door.

25. District Manager Montgomery entered the code into the electronic keypad and unlocked the office door. He told Ms. Smith to have a seat inside the office. When the door closed behind them, it was locked from the outside. No one else could enter.

26. There is a camera and video monitor in the office. Ms. Smith noticed that the camera showed no signal and that there was no image on the video monitor. Ms. Smith assumed that District Manager Montgomery had disabled the camera, which concerned her.

27. District Manager Montgomery stood in front of the seated Ms. Smith, grabbed the back of her head and removed his penis from his pants, forcing it into her mouth. He said, "You gonna take care of the boss, right?" Plaintiff understood this comment to mean that she must submit to retain future employment.

28. District Manager Montgomery aggressively pushed and pulled Ms. Smith's head back and forth, shoving his penis so far back into her mouth that she was choking and gagging.

29. Then District Manager Montgomery removed his penis from Ms. Smith's mouth and yanked her up while attempting to unbuckle her pants. Ms. Smith told District Manager Montgomery that she was having her period. Ms. Smith said this to avoid a vaginal rape.

30. Upon standing up, Ms. Smith noticed that District Manager Montgomery was recording the rape on his cellular phone, which was propped up on the desk.

31. District Manager Montgomery made Ms. Smith sit down again. He again shoved his penis into her mouth and continued to engage in an aggressive oral rape. Ms. Smith was choking and gagging, and District Manager Montgomery stated menacingly, "Yeah, choke on it."

32. Having seen that the camera in the office had been turned off, Ms. Smith feared for her physical safety. She believed District Manager Montgomery, who is much larger than she, may physically beat her if she attempted to resist. She knew that even if she called for help, no one would be able to enter the office to assist her because the door was locked from the outside. In

addition, she was afraid she may choke to death as District Manager Montgomery continued his aggressive oral rape. She was terrified and in shock.

33. After District Manager Montgomery finished raping her, he told her not to tell anyone what had happened, and he stated flippantly, "Fix yourself up."

34. After the rape, Ms. Smith immediately went to the restroom to compose herself. Plaintiff was fearful of what District Manager Montgomery may do to her next if she spoke about the sexual assault in his presence. To protect herself, she decided to say or do nothing to provoke him.

35. Once Ms. Smith left the office, District Manager Montgomery turned the camera back on. The videotape, obtained by police, shows him performing this task and then adjusting his clothing.

36. After the rape, District Manager Montgomery showed Ms. Smith a newly revised schedule. He had changed the schedule to replace the name of Ms. Clark, the former Store Manager, with Plaintiff's name. Plaintiff understood this to mean that District Manager Montgomery had promoted her to Store Manager in place of Ms. Clark. Plaintiff then left the store.

37. Ms. Smith was scheduled to perform at a wedding that evening. To fulfill this commitment, she traveled by car to the wedding venue. En route, she called Ms. Clark, the former Store Manager, and asked to whom she should report District Manager Montgomery's conduct. Later, she also spoke to another former manager to determine who she should call.

38. Plaintiff was never provided with a physical copy of Defendants' employee manual or handbook so initially she did not know who to contact and reached out to others to find out.

39. After Plaintiff finished her wedding performance, she immediately filed a police report with the Patterson Police Department on the date of the oral rape, Saturday, December 28, 2019.

40. The next day, a Sunday, having obtained a Family Dollar contact, Plaintiff immediately reported her sexual assault to Family Dollar. On information and belief, Joel Pulizzano, a Family Dollar Regional Loss Prevention Manager in New Orleans, is the individual whom Plaintiff contacted. Later that day, another individual named Gary Hoke, a Family Dollar Regional Human Resources Manager ("HR Manager Hoke"), called Plaintiff and acknowledged that she had made a report of sexual harassment.

41. Plaintiff and her mother explained to HR Manager Hoke that in light of her sexual assault by District Manager Montgomery, Plaintiff could not return to the worksite where she may be vulnerable to additional abuse. HR Manager Hoke agreed that she should not return.

42. On or around Monday, December 30, 2019, HR Manager Hoke requested and Plaintiff immediately provided a written statement detailing her oral rape by District Manager Montgomery.

43. On information and belief, additional Family Dollar employees were victims of sexual harassment.

44. On information and belief, HR Manager Hoke met with District Manager Montgomery on or around January 2, 2020 for an interview.

45. On information and belief, Defendants fired District Manager Montgomery at this meeting.

46. On information and belief, District Manager Montgomery did not bring to the meeting or turn in at the meeting his company cellular phone, on which he had recorded his sexual assault of Plaintiff.

47. On information and belief, Defendants did not take reasonable steps to secure District Manager Montgomery's company cellular phone, nor did they report the missing phone as a theft of company property to law enforcement.

7

48. Plaintiff further alternatively alleges, on information and belief, that if Defendants did obtain District Manager Montgomery's company phone, which was a crucial piece of criminal evidence, they unreasonably failed to turn over the phone or its contents to law enforcement.

49. On information and belief, Defendants' acts and/or omissions helped ensure that District Manager Montgomery remained at large, making it unsafe for Plaintiff to return to work at Family Dollar, where District Manager Montgomery could easily locate her.

50. On information and belief, District Manager Montgomery continues to remain at large and works as a manager for a similar retail chain in the South Louisiana region.

51. Defendants constructively discharged Plaintiff from employment. Plaintiff's working environment, following the rape of Plaintiff by Defendants' supervisory employee, was so severely abusive and intolerable that neither Plaintiff nor any reasonable person could return to the worksite.

## VI.  STATEMENT OF CLAIMS

**SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND THE LOUISIANA EMPLOYMENT DISCRIMINATION LAW**

52. Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 51, inclusive herein.

53. Defendants discriminated against Plaintiff on the basis of her gender (female). The discrimination arose from unwelcome physical conduct of a sexual nature in the form of an oral rape of Plaintiff by a Family Dollar supervisor, District Manager Montgomery.

54. The rape of Plaintiff by a Family Dollar supervisor was a severe incident of sexual harassment that altered the terms, conditions, and privileges of Plaintiff's employment and created an abusive working environment.

55. Plaintiff's working environment following her violent oral rape by a Family Dollar supervisor was subjectively abusive to Plaintiff and objectively abusive to any reasonable person.

56. During the rape of Plaintiff, District Manager Montgomery forced his penis into Plaintiff's mouth and, in so many words, instructed her to take care of the boss, which Plaintiff understood, and which any reasonable person would understand, to be a condition of future employment. Plaintiff thereafter succumbed to an aggressive oral rape by District Manager Montgomery.

57. After the rape, District Manager Montgomery indicated to Plaintiff that he had promoted her and/or reassigned her to Store Manager of the Patterson, Louisiana facility. This constituted a significant change in employment status and was, therefore, a tangible employment action.

58. District Manager Montgomery was an individual empowered to promote Plaintiff and/or reassign her to a position with different and/or additional responsibilities. District Manager Montgomery also had the authority to hire and fire.

59. Defendants constructively discharged Plaintiff by making her employment conditions so subjectively and objectively intolerable that she could not return to work.

60. Furthermore, on information and belief, Defendants engaged in official acts, constituting an additional tangible employment action, when they unreasonably failed (a) to collect and turn over to law enforcement, or (b) report as stolen to law enforcement, the company cellular phone on which District Manager Montgomery recorded the rape, ensuring a continued subjectively and objectively unbearable work environment.

61. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, Defendants are strictly liable for the sexual harassment (rape) that Family Dollar's supervisory employee, District Manager Montgomery, committed against Plaintiff.

62. In the alternative, Defendants are unable to establish they exercised reasonable care to prevent or promptly correct the behavior of the Family Dollar supervisor who raped Plaintiff. Accordingly, Defendants are liable, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, for the sexual harassment (rape) that Family Dollar's supervisory employee, District Manager Montgomery, committed against Plaintiff.

63. In the further alternative, Defendants are unable to establish Plaintiff acted unreasonably to avoid harm. At all relevant times, Plaintiff took advantage of any and all preventative and corrective opportunities provided by Defendants and otherwise acted reasonably to avoid harm, including, but not limited to, immediately contacting Defendants to report the rape and providing a written statement to Defendants detailing the rape. Accordingly, Defendants are liable, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, for the sexual harassment (rape) that Family Dollar's supervisory employee, District Manager Montgomery, committed against Plaintiff.

64. In the further alternative, to the extent District Manager Montgomery was a proxy for either of or both Defendants, there is strict liability for District Manager Montgomery's rape of Plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*

### VII.  DAMAGES

65. Plaintiff restates, re-alleges, and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 64, inclusive herein.

66. Plaintiff alleges that Defendants engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of Plaintiff. Accordingly,

Plaintiff is entitled to punitive damages against Defendants under Title VII of the Civil Rights Act of 1964.

67. In addition, as a result of Defendants' illegal conduct in violation of Title VII of the Civil Rights Act of 1964, Plaintiff is entitled to the following relief: compensatory damages, back pay, benefits, front pay, reasonable attorney fees, and costs.

68. As a result of Defendants' illegal conduct in violation of Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.*, Plaintiff is entitled to the following relief: compensatory damages, back pay, benefits, front pay, reasonable attorney fees, and costs.

## VIII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

69. Prior to filing this action, Plaintiff timely filed a written charge with the Equal Employment Opportunity Commission ("EEOC") as to all Defendants within the appropriate number of days and has received a right to sue letter.

70. In conformance with the law, Plaintiff has filed this action prior to the expiration of ninety (90) days from the date of receiving her right to sue letter from the EEOC and more than thirty (30) days following notice under Louisiana law.  Plaintiff has exhausted administrative remedies.

## IX.  JURY DEMAND

71. Plaintiff herein demands a trial by jury of all issues in this action that may be tried by jury.

## X.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for judgment as follows:

a. For punitive damages;

b. For compensatory damages, including physical and/or emotional damages resulting from Defendants' illegal conduct, as well as any out-of-pocket expenses;

c. For back pay and front pay, including wages and benefits.

d. For attorney's fees and costs;

e. For pre- and post-judgment interest;

f. For injunctive and other equitable relief as provided by law;

g. For such other and further relief as may be just and proper.

Respectfully submitted,

*/s/ Robert B. Landry III*
Robert B. Landry III  (#18998), T.A.
rlandry@landryfirm.com
**ROBERT B. LANDRY III, PLC**
5420 Corporate Boulevard, Suite 303
Baton Rouge, Louisiana  70808
Telephone:    (225) 349-7460
Facsimile:     (225) 349-7466

**COUNSEL FOR PLAINTIFF,
COURTNEY SMITH**